May it please the court, I'm Gerald Smith. I represent defendant appellate James Stone. There are several issues before the court in this appeal. I think there are two that certainly leap out at me. One is the cross-referencing in the guidelines, which was addressed in the brief, of course. And the second has to do with standards of review for what used to be called departures, sentences in the range, sentences outside the range, sentences below or above the advisory guideline range. I think since Booker that there is some question, certainly in my mind and I think in the minds of many, with respect to what is this court's jurisdiction. I'm going to ask you to speak up. I'm sorry, Your Honor. What is this court's jurisdiction with respect to reviewing a sentence, whether it is within or not within the guidelines? With respect to the first issue, Your Honor, on the cross-referencing, I think the brief covers that. Unless the court has questions, I'm not sure that I have anything to add to what is in the briefing with respect to the issue of whether this was an embezzlement or whether it was simply an imprudent use of the ESOP funds that were invested unwisely. An imprudent use of ESOP funds when he took the funds and bought what he thought was a security in his own name? Imprudent use? What's the difference between that and theft? Your Honor, the wire to, and this is, I'm sorry. He took the money out of the ESOP funds and he used it under this Nigerian scam to pay what he thought was necessary for him to make money, not for ESOP to make money. Your Honor, that's the difficulty. There were two separate things involved here. There was the Nigerian, what's looked at as the Nigerian scam where he was told, you know, we need to, in effect, wash this money, we need to get chemicals. That money, his own money was used, and the alpha line of credit was used. The ESOP fund, the monies from that was used to invest, he thought, in euros. This was at the time when there was a lot of speculation and investment in euros in terms of the fact that they were becoming more and more prevalent, popular, more countries were using them. It appeared that the investment would be something that could pay off. That was a separate investment than the, what we've referred to as the Nigerian scam. Yes, and of course, Mr. Stone's contention, and it's not really an issue on appeal, even with the Nigerian scam that he used the line of credit, he was named on that line of credit. Whether or not he could have used those funds is something that is not really an issue here. And he did agree to restitution for the loss, because any way you look at it, none of this was very bright. In fact, I think all of us, in hindsight, and this is not the only case that I've been involved in where this Nigerian scam has come up, and I think we all scratch our heads and say, how could someone believe this was real? And it happens over and over again that otherwise intelligent people do believe it's real. This morning as I cleared my mailbox with a daily quota of spam, I'm wondering who really falls for these things, and yet they keep coming out. And they do, and I'm sure this isn't the first case that you've heard on appeal with it. And yes, there is the issue of how do people believe this is real? People do. That's the best posture of this record. I think the best you can say on this record was that he knew he was using funds inappropriately, but he thought he was going to make enough money so they could pay it back. Now, isn't that about the best you can say on this record? With respect to the line of credit, yes. With respect to the ESOP funds, which were the investment, I think that that's taken an extra step. On this record, is there any way you can say he didn't know he was misusing funds that were not his to use? He was authorized to invest the ESOP funds. In fact, it's in the indictment that that was his responsibility, to take these funds and invest them. It was his responsibility to do so prudently. What Judge Beer points out to you, and I don't know how you're going to get around it, when he went over and he saw this, all of what he thought was money, and maybe it was, I don't know, but anyway, he wasn't looking to say, I'm going to invest and make this a killing for my company. He was saying, I'm going to invest and make a killing for myself. And again, with respect to this mound of money that he thought he was going to get, that may very well be true. But it is the ESOP investment. We're not deciding it, so if it's not true, we're going to rule on this record. So I'm not going to make a finding of what's true and what's not true. I'm looking at the record. And the record says you said it may be true. It is true, isn't it, on this record? How can you dispute it on this record? That's precisely what he was doing, isn't it? He was – I think the record indicates he was doing two things. His plea agreement says he acknowledges misappropriation. That's specifically the word, misappropriation. Doesn't that kind of end it right there? That's not just poor judgment, I made a bad investment. He acknowledged in his plea agreement misappropriation. And again, Your Honor, we addressed that in the briefing, that misappropriation, exactly what does that mean? Is it the same as embezzlement or theft? Did he intend to steal it? And I understand the court's questions. It's the same questions that we dealt with in the district court. That's in your position. Your job is to defend the case you've got. But in this case, the plea agreement says misappropriation. It doesn't say misapplication. It says misappropriation. That's not just making a mistake. That's diverting the funds. And that's, I think, where your client's got a problem. Aside from saying that I don't agree with the analysis and repeating the reasons. I agree with the dictionary definition of misappropriation, which means making the property one's own. Undoubtedly, that's what it means. And, well, there are several dictionary definitions, Your Honor. And as I said, I think that we can probably ‑‑ I feel like, frankly, I am simply spinning my wheels here. I don't know that there's anything more that I can say. You want to go to the sentencing issues? I think, Your Honor, and I see that my time is almost up, I did want to say something for rebuttal in the case, that there is something to rebut. But I think the sentencing issues, Your Honor, primarily revolve around the departure. I think that probably attempting to argue some of the issues once we get past the cross-reference in terms of factual issues is no doubt a somewhat wheel-spinning exercise also. But I think that the issue is departure, or what we used to call departure, perhaps a sentence below the advisory guideline range. And I think there were several issues brought up in the district court and on appeal that would make that reasonable. One of them was repayment of restitution. One of them was Mr. Stone's assistance prior to any investigation. Some two years before the government got involved with investigation, he went to Secret Service, provided assistance. The district court stated very specifically, you've helped other people. And I'm referring to page 17 of the transcript, page 54 of the excerpt of the records. Because of what he did, it saved other people from falling into this trap. That would be a basis for departure. The statute talks about considering the need for restitution. And again, the district court was very concerned about that and was skeptical that Mr. Stone would ever be able to pay the full amount of restitution. And I think that's probably a reasonable skepticism, $145,000 plus or minus total restitution. Mr. Stone is approaching 60 years old. His employment possibilities are very low at this time. But paying as much restitution as possible should be a concern. And again, the court expressed that concern on page 58 of the excerpt. I believe that's page 21 of the sentencing transcript. And yet, in addressing these concerns, did not take those into consideration in determining what a reasonable sentence should be. I think that the cases that say this court is without jurisdiction to review a district court's determination not to sentence outside the guideline range, since Booker, needs to be re-evaluated. That if now the guidelines are advisory and the standard of review is for reasonableness, that the entire situation has to be reviewed, including those reasons for sentencing above, below, or within the guideline range. Should we defer submission until Zavala and Cardi come out? Your Honor, under some circumstances, I would say yes. The problem is, Mr. Stone, if he were sentenced, well, within the guideline range that we were arguing, zero to six months or a departure down to that, he has served at this point approximately eight months, I believe, and with every passing day. By the time the case is decided and then this case is submitted, I think perhaps there may be a more definitive answer. He's presently in custody and he has served eight months. And has served eight months. I think that at some point, this Court and probably eventually the Supreme Court is going to have to answer the question of what is the appropriate standard of review and what kinds of things should the reviewing court look at in terms of determining whether to look at what a district court does with respect to the advisory guideline range. The alternative would be to hold this case for submission until after, and now the name of the case is escaping me, and I could file a motion for release pending appeal. My time is much more than up. Good morning. My name is George Breitschmidt. I'm an assistant U.S. attorney in Boise, Idaho. May it please the Court. I'd like to first address the departure issue that counsel just addressed a moment ago. And as the Court's aware, the circuit addressed this issue in the Lynn decision. That was a pre-Booker decision where the Court indicated that the circuit would not consider a departure, or excuse me, a decision by the district court not to downward depart as long as the Court acknowledges that it has the authority. And, of course, that's what happened in this case. Judge Lodge acknowledged that he had the authority to downward depart but declined to do so. The Court did indicate, and the record's clear, page 18 of the sentencing transcript, that many of the issues raised by counsel were considered in imposing sentence. For example, his cooperation. The defendant, Mr. Stone's cooperation with law enforcement officials. Judge Lodge considered in giving the defendant two levels for acceptance of responsibility, even though the pre-sentence investigation reporter had not given him those two levels. So he went down from a level 22 and sentenced Mr. Stone at a level 20. What was the reason given by the government for not moving for the third point reduction? Your Honor, as the pre-sentence reporter found that the defendant was not candid in his pre-sentence investigation report, and one of the terms of the plea agreement is that Mr. Stone fully comply with the pre-sentence investigation process, and Mr. Stone was not being truthful. The federal pre-sentence reporter found that, in fact, Mr. Stone was not being candid during the interview process, and therefore the government elected not to grant him. Well, that's a conclusion. What was the evidence upon which the pre-sentence report concluded that he was not candid? Well, one of the things counsel just mentioned a moment ago, the Euro transactions. And there was a receipt. The factual basis for the offense of conviction is a false document that Mr. Stone gave to an auditor of the ESOP, or of the pension plan. And when Mr. Stone was terminated, they found various iterations or copies of that documentation, the false documentation, in Mr. Stone's desk. And, of course, the pre-sentence reporter asked him about this, and he denied having created that false document, which is clearly inconsistent with what the evidence says. And the several false iterations were pretty good circumstantial evidence that it was not by accident that the receipt was created. Yes, yes, that's correct, Your Honor. And also, counsel mentioned a moment ago, Euro futures. The pre-sentence reporter, again, Mr. Stone brought that up during the pre-sentence investigation process, and the pre-sentence reporter found, and the Court can look at paragraph 27 of the pre-sentence, or 12, excuse me, that there was no documentation to support a claim of Euro futures. There really is nothing that supports that claim that Mr. Stone was trying to make during the pre-sentence report process. So, ultimately, the evidence was that he was not candid, Mr. Stone was not candid, and, therefore, they did not recommend a three-level reduction, and the government did not make that motion. I'd like to just get back briefly, if I may, to the departure issue, the Lynn decision. And we believe, or would submit, that it's still good law. As the Court's aware, pre-Booker, when guidelines were mandatory, the Court found that, in fact, this Court found that it would not review those decisions. We believe that that's even more compelling in this case, of course, when the guidelines are simply advisory. If the Court acknowledges that it has the authority to depart, then there's no reason that this Court should review those decisions post-Booker when they're simply advisory, when it wasn't doing it prior to the advisory nature of the guidelines. In addition, the Court's issued two decisions on departures, the Mohammad case and also Meriwether, where the Court looked at the standard of review on departures and found that it would be abuse of discretion. The Court would review the departure issue on an abuse of discretion standard, which is, of course, a lower standard than what it was doing pre-Booker, a de novo review, essentially prior to Booker. And, again, there's no reason to change that analysis for the Court to now increase the level of review in a case where a trial sentencing judge declines to grant a departure, which is what is being argued by the defense in this case. I'd like to just briefly address the first issue raised by Mr. Stone, the issue of the facts and whether the Court properly used the cross-reference to increase the guideline calculation. I know the Court acknowledged the admission in the plea agreement, but I would also point out the facts in the case are such that it's clear what the defendant's intent was. If the Court looks at the dismiss counts 6 through 10, there are a series of transactions that Mr. Stone was involved in, basically embezzlement, personal application of corporate funds to his personal use or to his personal benefit, purchase of items from Gucci, jewelry, hotel purchases, ATM transactions. All those transactions were for clearly his personal benefit, not for anyone else, and was appropriate in terms of establishing Mr. Stone's intent, not just with those transactions, but we would submit with the entire scheme, which was for his personal benefit, not for the ESOP or not for the corporation. Unless the Court has any questions. Thank you very much, sir. Thank you. Thank you. The case just argued is submitted. The next case on the calendar is United States v. Ford.
judges: Farris, Clifton, Bea